The first case we're going to hear is Avila Sandoval v. Holder. Thank you, Counsel. Good morning, Your Honors. Dave Miller appearing on behalf of the petitioner in this case, Mr. Avila Sandoval. Your Honors, this case comes to the Court on petition for review with respect to a BIA decision denying Mr. Avila's motion to reopen his case. On the basis of two ostensibly independent grounds. The first ground the BIA denied his motion to reopen on was on the ground of timeliness. And the second ground that the BIA put forth was with respect to voluntary departure, and specifically the BIA held, albeit erroneously, that the petitioner, Mr. Avila, was ineligible for cancellation of removal because he had overstayed his voluntary departure deadline. Now, in our opening briefs in this case, in addition to jurisdiction at this point, we'll just leave to the briefs, unless the Court has any questions about it. We also briefed in some detail both the timeliness issue as well as the voluntary departure issue. The timeliness issue, with respect to the timeliness issue, Mr. Avila concedes and acknowledges that he filed his motion to reopen more than 90 days after the direct appeal decision issued by the BIA in this case. However, he also argues, as we did in detail in our opening brief for several pages, that the deadline should be equitably told, that binding authority under this circuit, specifically the Sokoop-Gonzalez case, or the circuit held in Bonk, that it would, will apply, quote, unquote, will apply equitable tolling in any case where, despite all due diligence, the party invoking equitable tolling is unable to get vital information bearing on the existence of the claim. And that's at Sokoop 1193. There's no question that that was indeed the case here. And, in fact, the specific evidence that Mr. Avila presented to the Board in his motion to reopen is evidence of his eldest daughter, Cynthia, of a new medical condition whereby she has been diagnosed as suffering from seizures and migraine headaches. There's no dispute whatsoever coming from the government that this evidence was new and that this was not evidence that was ever available to the BIA, to the IJ, or to even Mr. Avila himself prior to the January 14th submission of his motion to reopen. And, indeed, Mr. Avila even recognized the fact that this was new evidence in his motion to reopen papers. And under Sokoop-Gonzalez, we would respectfully request that this Court remand to the BIA with the instructions that it grant or that at least decide the motion to reopen on its merits and not deny it as untimely. Now, it's important to note here that the timeliness issue is something that the government just simply ignores in its opposition brief. And the only mention at all to the timeliness issue is two fleeting mentions to a sua sponte review. What the BIA did in this case is that it simply said that it would not exercise its sua sponte review, which it can do even when motions are untimely. And the government here in its opposition brief simply said that if it loses on the voluntary departure issue, that this Court should remand at a minimum, according to the government, should remand to allow the BIA to determine whether or not it should exercise its sua sponte review. That misses the point entirely, because the government, the words equitable tolling, despite the fact that Avila briefed that issue in detail, don't appear anywhere in the government's brief. And in fact, if you're going to be clear, though, about what you want, if it were deemed that the filing of the motion to reopen were in effect a withdrawal of the voluntary departure, would that be satisfactory to your client, in which case the BIA would simply consider whether or not to sua sponte invoke its authority and determine the motion? Well, yes and no, Judge McKeown. It would be certainly be, if that's as far as the Court is inclined to go, remand to the BIA to determine sua sponte, to entertain the sua sponte consideration and analysis a second time, now knowing that voluntary departure is not a bar to relief, yes, that would be something that might be struck. And that's how I read your brief at the end, so that's why I'm asking you what it's, you know, we have to know what you want to determine whether you may or may not get it. Absolutely understood. So you're arguing against what the government wants. I want to know what you want and what the path to that is. What we would like, Your Honor, is for an instruction to the BIA, granting the petition full review, the instruction to the BIA that it consider on the merits Mr. Avila's motion to reopen. And that would require, and that would mean, then, that not only must the BIA deem his motion to reopen timely by applying the law of equitable tolling set forth in Socop Gonzales and its progeny, but also that the BIA not deem him ineligible for relief based on cancellation of removal with respect to the law. So the short answer in English to that is that he wouldn't get any benefits of cancellation of removal, correct, under that scenario. Let's assume if he wins, of course, he would stay. If he were to lose under your scenario, he would then be ordered removed, correct? If he loses his sua sponte determination? Yes. And he would be ordered removed without a voluntary departure period, correct? If you ‑‑ well, this, Judge McKeown, I believe this actually gets into the second issue in the case with respect to voluntary departure. Mr. Avila's position on that is that, first, you would not apply DADA retroactively. Let's just, for talking purposes, say he lost that argument. Yes. The answer to your question is yes. Okay. Now, one other question. You say that it would be a remand to allow the BIA to sua sponte consider the cancellation of removal. Your first position, I thought, was if there were a remand ‑‑ well, you would want us to determine that it's timely or a remand for the board to reconsider that. In the first instance, what we are primarily requesting from this Court is an instruction to the BIA. The BIA, one, deem his motion to reopen timely and entitled to equitable tolling for all the reasons set forth in our opening brief and then again in the reply papers. And, two, find that voluntary departure, that he is not ineligible for cancellation of removal because he is not ‑‑ did not overstay his voluntary departure deadline. And whether or not the Court reaches that second conclusion by either not applying DADA retroactively or whether or not he is deemed to have withdrawn from voluntary departure by filing his motion to reconsider, that's a separate question. But in the end, we would ask this Court to find and remand and tell the BIA that it cannot deem him ineligible. It cannot ‑‑ in other words, it cannot be a ground for denying his motion to reopen. We would submit on the basis that he is ineligible for cancellation of removal because he overstayed his voluntary departure deadline. So let me ask then, in some ways, if we leave aside all these other issues, this is like many cases that come up to determine whether there was a timely filing. Is the record sufficient that we could determine whether or not Sokop Gonzalez applies here? I believe so, Your Honor. And if you were unsuccessful on that point, would that be basically the end of the case? No, I don't think so. Because I think if we were unsuccessful at Sokop Gonzalez, we would still ask the Court to remand with an instruction that the BIA must consider equitable tolling and apply the well‑binding, the law of this circuit, setting out the standard for what it would be. Even if we thought equitable tolling didn't apply or it hadn't been made out here, you would still want to remand for the BIA to decide the same thing? Yes. Why? What would be the structural basis for that? Well, I'm not sure if this is what you're getting at, Judge McKeown, but my understanding of your question is that, it answered this way, is that under INS v. Ventura and Gonzalez, and in this case, this Court's embanked decision in Fernandez Ruiz, you know, the basis of remanding to the BIA and other agencies for decisions and review of discretionary decisions is to allow, is to not essentially step on the toes of the agency and allow, in the first instance, the agency to make that determination. That would be the basis for remanding it, while at the same time, this Court should recognize that equitable, should tell the BIA and recognize that equitable tolling clearly is applicable here because the factors, as the government in its silence shows. I would think in any event, you would want either this Court to decide or to remand to resolve the question of the effect of data retroactively, both retroactively and whether the Board or we would rule that where data was not in effect and what was in effect was our rule, that they might want to deem the filing of the motion to constitute a withdrawal of the petition for voluntary removal. So that's one possibility that the Board might or might not adopt. I mean, they have adopted that prospectively, but they might want to consider a case in which the rule at the time was that it did toll it and the petitioners relied on that and how they would want to apply data in that circumstance. We could either decide that possibly or I think the government has asked that we remand it to the Board under those circumstances. Yeah. May I just comment on that, Your Honor? Yes. I'm not quite sure, Your Honor, if the government actually has said that it wants it remanded to the Board under that circumstance. It's not clear, but I agree. It did say that in both opening and conclusion of its brief, that if we resolve the voluntary departure question in some manner, that then we should not reach the rest of the issues. Well, and as I ---- I think they said that we should then remand to the Board. Well, and, Judge Reinhart, just quickly in response, I think just getting back to what I said in response to Judge McEwen's question a moment ago, Mr. Adler's position is sort of as a fallback position, if you will, that if the Court is not inclined to reach the equitable tolling and timeliness issues, it should at least in any event remand the case to the BIA to allow it to determine timeliness and to determine in light of whatever this Court decides to do with respect to DOTA's applicability on a voluntary departure. Well, it seems to me that whatever happens with the rest of the case, your client has an interest in knowing whether he has violated the voluntary departure provision. And that's a separate independent issue that affects your client in the future. He loses certain rights if he exceeded the voluntary departure period. So that whatever the outcome on the rest, whether we reach it, don't reach it, you still need a determination of that question. Absolutely. That's true. All right. Thank you, counsel. Thank you. Thank you, Your Honors. And good morning. I'm John Cunningham from the Department of Justice appearing on behalf of the Attorney General. Judge Reinhart, Judge Noonan, it's nice to see you both again. Judge McEwen, good morning. May it please the Court. We've been talking this morning about two aspects of the Board's order. First, the question of the effect of the DADA decision and whether the Board was correct in saying that these petitioners had overstayed their voluntary departure period. And second, whether the motion to reopen was late, because it was filed outside the 90-day timely period. My colleague has given you an unpublished Board decision where a Board member did, in fact, withhold that the filing of a motion to reopen told the or should be construed as a unilateral withdrawal of a request for voluntary departure. He's characterized that decision accurately. Two points with respect to it. One is that it is an unpublished decision, so it doesn't bind the Board. It's not precedential. And second, the decision was issued before the issuance of the regulations published by the Attorney General, where he said that the new regulations that allow an alien to be construed to have unilaterally withdrawn a request for voluntary departure upon the filing of a motion to reopen or a motion to reconsideration would only be applied prospectively, would not apply to cases such as this one. If the only applies to what? It only applies prospectively, Judge Newman. It does not apply to a case such as this one, where the motion, in this case a motion for reconsideration, was filed long before the data decision and before the regulations were issued. So the question is, would the Board similarly construe this motion for reconsideration, and if the court wants the Board to do that, it needs to remand to allow the Board an opportunity to make that determination. I don't know what the Board will do, because, as I said, the one Board order that did give this sort of relief to an alien was issued before the regulations. What the Board will do when it has to look at this question again against the backdrop of the regulations, I cannot say. If the Board should determine that the regulations bar it from giving this petitioner similar relief on the basis of his motion for reconsideration, then if there's a subsequent petition for review, the issue would be timely and right for this Court to consider. If, let me ask you, if the Board decides it doesn't have that authority and then it comes back up to this Court, then at that point, could this Court invoke supervisory authority to say that in the circumstances such as this one, that you would have to deem that regulation retroactive? I hesitate to answer Your Honor's question with any degree of specificity. Certainly the Court would have the issue before it, and it would have to consider what arguments were being made by the petitioner in that case, whether it was some sort of unfairness issue, some sort of equal protection issue. I can only hazard a guess. But it would have the question before it whether a petitioner such as this one should be treated differently from petitioners who do fall under the regulations. All they really want, as I heard him, is that, in fact, is to say, in effect, that there is no voluntary departure out there, and for the BIA simply in its discretion to determine, in its discretion, wants to take a look at this and whether it would take a look at De Soca Gonzalez. Right. You know, and so I listen to this, and then I look at all this briefing and the complicated nature of this case, and I wonder why we're here and why the government wouldn't just agree to that because it doesn't bind the BIA to any result. It's totally within the discretion of the BIA then to make that decision. Why wouldn't the government just agree to have that occur? Have what occur, Your Honor, please? Have this case sent back. He said, in effect, that if the voluntary departure is deemed withdrawn, all they want is to see if the BIA would, in its discretion and sui spondi, which is getting, you know, pretty far out there, make a determination. Okay. I understand now, Your Honor. Yeah, I think that the unpublished board decision, which Mr. Miller gave the court, did change the landscape a bit because there's an example of the board doing precisely what the petitioner wants. I think it is now a fair result for the board to be given an opportunity to decide whether it can do the same thing now with the regulations in place. I think that is an open question that has not come up before. But you wouldn't need us to do that, would you? I mean, in other words, you could just, by agreement, send it back, right? What Judge McKeon is saying is do you agree to a remand so that the board may resolve that question with respect to the voluntary departure, the question raised by the unpublished decision? Well, I do.  I think that the board would have to decide whether for that purpose and to permit the board either to reconsider and to soak up Gonzales or what other way to determine the question of whether a petition may be filed either by the defendant or by the petitioner or is to be responded by the board. I don't have a problem with any of that, Your Honor. I think if the court would instruct us, we would be happy to craft a motion to remand or some sort of joint stipulation to remand. I think that with respect to the lateness question, I think there the petitioner is on shaky ground, but if you want the court to consider it, the board would do so. One of the problems I noticed with respect to the lateness argument, and the board was clearly right, factually, the motion was filed more than 90 days beyond the statutory deadline. I've never heard of equitable tolling being applied in the absence of a claim of ineffective assistance of counsel. My colleague has cited language from the Sokop case that seems to indicate that the court might extend that, but I've just never heard of it being done. And the other thing is the uncertainty of what would happen when they go back. Sure. Correct? Yes. Yes. I mean, I don't know why the court would need to direct you. If you agree to this, then wouldn't it simply be couldn't we just hold fire, so to speak, and you could craft a remand order with counsel? Or if not, we could. We could. We could do the order. But you know, you have the specifics that you can work out. It seems to me you could craft that. Well, why don't we give you time to see if you do. And if you can jointly advise us that you haven't been able to agree on an order, then we can do it. Okay. Fair enough, Your Honor. How much time would you like to give us? Let's see. Let's let's ask your opponent at this point what what his reaction is. Ten. Yeah, seven days, I suppose. We'll give you ten. Ten. Calendar days. I do have to fly back. Are you interested in this sort of a proposal? Well, Your Honor, we would just, yes, if I'm understanding the proposal correctly. I'm not quite clear on whether or not the court is asking whether there would be, I mean, obviously this would be there would no longer be before the court. But whether or not the court, the alternative would craft an order remanding it to the BIA, for the BIA to determine whether or not voluntary departure was automatically withdrawn, or whether or not the court would make that determination in the first instance. Mr. Avila's position is, initially anyway, that the court should, in this circuit, craft a rule on its own. It does not need the BIA to determine whether or not motions to reopen or reconsider were automatic, should be deemed implicit withdrawals, because there's nothing. You might not want to push your luck, though. I mean, you're gambling with that. If you can reach an accommodation with the government as to how your client could be determined, that might make sense. And if you can't, then the issues are back on the table for us. There's another way to look at it from your standpoint, is that your choice is between having the government make that determination or the BIA, and this court might depend on which you have more confidence in. But one of the ways you get two shots at it, you first let the BIA do something that would seem to be most reasonable, and I think at least your opponent in this court believes that it would be reasonable. Whether that represents the view of the government in general or the BIA is another matter, but at least you have the test of one government representative who would find that a reasonable solution. So you might want to take two shots and let the board decide it first and then see what the court thinks of what the board does. Although, as you know, our ability to cause the board to act in a reasonable way is limited. So why don't you let us know in 10 days whether there's some order that you agree on, and if not, then we'll consider what to do, including perhaps considering whether or not to remand at all or to remand, which seems probably more likely. Thank you, Your Honor. Okay. No problem, Your Honor. Thank you. I thank the Court for its attention. Thank you. Case disargued will be submitted. You might both want to listen to the next case in case that has any effect on this discussion. All right. The next case is Navarez-Navarez v. Holder.
judges: Reinhardt, Noonan, McKeown